**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: TESTOSTERONE REPLACE-MENT THERAPY PRODUCTS LIABIL-ITY LITIGATION** | MDL No. 2545 <br><br> Master Docket Case No. 1:14-cv-01748 <br><br> Honorable Matthew F. Kennelly |
| **THIS DOCUMENTS RELATES TO:** <br><br> *Brad Martin, et al. v. Actavis, Inc.* <br> Case No. 15-cv-04292 | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Joseph P. Thomas
Jeffrey F. Peck
K.C. Green
Jeffrey D. Geoppinger
**ULMER & BERNE LLP**
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Phone: (513) 698-5000
Fax: (513) 698-5001
Email: jthomas@ulmer.com
Email: jpeck@ulmer.com
Email: kcgreen@ulmer.com
Email: jgeoppinger@ulmer.com

*Attorneys for Actavis Laboratories UT, Inc.*
*f/k/a Watson Laboratories, Inc., Actavis*
*Pharma, Inc., and Actavis, Inc., f/k/a*
*Watson Pharmaceuticals, Inc.*

# TABLE OF CONTENTS

I.      STATEMENT OF FACTS ............................................................................................ 1

     A.     Plaintiff's Allegations ............................................................................... 1

     B.     Plaintiff's Medical History, Prescription for and Use of Androderm .................... 1

     C.     Plaintiff's MI .......................................................................................... 3

     D.     Androderm ............................................................................................. 3

II.     LAW AND ARGUMENT                                                                        5

     A.     Plaintiff Cannot Prove Causation .............................................................. 5

     B.     Plaintiff's Design Defect Claims Should Be Dismissed ................................... 6

     C.     Plaintiff's Failure-to-Warn Claims Should Be Dismissed ............................... 7

     D.     Plaintiff's Other Negligence Claims Should Be Dismissed ............................ 11

     E.     Plaintiff's Express Warranty, Implied Warranty, Negligent Misrepresentation, Fraud, Redhibition, Consumer Fraud And Unjust Enrichment Claims Should Be Dismissed .............................................................................................. 11

     F.     Plaintiff's Claims Against Actavis, Inc., Should Be Dismissed ........................ 15

     G.     Plaintiff's Request for Punitive Damages Should Be Stricken .......................... 15

III.    CONCLUSION ..................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Atwater Creamery Co. v. Western Nat. Mut. Ins. Co.*,
   366 N.W.2d 271 (Minn. 1985)................................................................ 6

*Bilotta v. Kelley Co.*,
   346 N.W.2d 616 (Minn. 1984)............................................................ 6, 7

*Bruzer v. Danek Medical, Inc.*,
   No. CIV. 3-5-971, 1999 WL 613329 (D. Minn. Mar. 8, 1999) ......................... 10, 11

*Bryan v. Kisson*
   767 N.W.2d 491 (Minn. App. 2009)....................................................... 5

*Caplinger v. Medtronic, Inc.*,
   921 F. Supp. 2d 1206 (W.D. Okla. 2013) ................................................ 11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).................................................................... 5

*Crenlo v. Austin-Romtech*,
   No. A03-851, 2004 WL 948352 (Minn. App. May 4, 2004)................................ 12

*DeCourcy v. Trustees of Westminster Presbyterian Church, Inc. of Minneapolis*,
   134 N.W.2d 326 (Minn. 1965)........................................................... 10

*Dennis Simmons, D.D.S., P.A. v. Modern Aero, Inc.*,
   603 N.W.2d 336 (Minn. App. 1999)...................................................... 14

*Finn v. Moyes*,
   No. 14-1293, 2017 WL 1194192 (D. Minn. Mar. 30, 2017) ............................... 15

*Flynn v. Amer. Home Products Corp.*,
   627 N.W.2d 342 (Minn. App. 2001)...................................................... 13

*Forslund v. Stryker Corp.*,
   Civ. No. 09-2134, 2010 WL 3905854  (D. Minn. Sept. 30, 2010) ........................ 13

*Frey v. Montgomery Ward & Co.*,
   258 N.W.2d 782 (Minn. 1977)......................................................... 8, 15

*Germann v. F.L. Smithe Mach. Co.*,
   395 N.W.2d 922 (Minn. 1986).......................................................... 8, 9

*Giorvigen v. Cirrus Design Corp.*,
   816 N.W.2d 572 (Minn. 2012)............................................................ 9

*Holm v. Sponco Mfg., Inc.*,
  324 N.W.2d 207 (Minn. 1982) ................................................................. 7

*Houston v. Medtronic, Inc.*,
  957 F. Supp. 2d 1166 (C.D. Cal. 2013) ................................................... 11

*Huggins v. Stryker Corp.*,
  932 F. Supp. 2d 972 (D.Minn. 2013) .................................................... 9, 11

*J&W Enters. v. Econ. Sales, Inc.*,
  486 N.W.2d 179 (Minn. App. 1992) ........................................................ 10

*Jefferson v. Lead Indus. Ass'n, Inc.*,
  106 F.3d 1245 (5th Cir. 1997) ................................................................. 13

*Johnson v. Niagara Machine & Tool Works*,
  666 F.2d 1223 (8th Cir. 1981) ................................................................. 10

*Johnson v. Van Blaricom* ,
  480 N.W.2d 138 (Minn. App. 1992) ........................................................ 10

*Johnson v. Zimmer, Inc*,
  No. Civ. 02-1328, 2004 WL 742038 (D. Minn. Mar. 31, 2004) .............. 5, 7, 10, 12

*Kallio v. Ford Motor Co.*,
  407 N.W.2d 92 (Minn. 1987) .................................................................. 6

*Kapps v. Biosense Webster, Inc.*,
  813 F. Supp. 1128 (D. Minn. 2011) ........................................................ 8, 9

*Kruszka v. Novartis Pharms. Corp.*,
  19 F. Supp. 3d 875 (D. Minn. 2014) ....................................................... 9

*Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*,
  742 F.3d 845 (8th Cir. 2014) .................................................................. 14

*Lubbers v. Anderson*
  539 N.W.2d 398 (Minn. 1995) ............................................................... 5, 7

*Marko v. Aluminum Co. of Amer.*,
  No. CX-84-789, 1994 WL 615005  (Minn. App. Nov. 8, 1994) ............... 10

*Mulder v. Parke Davis & Co.*,
  181 N.W.2d 882 (Minn. 1970) ............................................................... 8, 10, 11

*Osborne v. Twin Town Bowl, Inc.*
  749 N.W.2d 367 (Minn. 2008) ............................................................... 10

*Riley v. Cordis Corp.*,
  625 F. Supp. 2d 769 (D. Minn. 2009) ..................................................... 12

*ServiceMaster of St. Cloud v GAB Business Services, Inc.*,
    544 N.W.2d 302 (Minn. App. 1996).................................................................... 14

*Smith v. Brutger Cos.*,
    569 N.W.2d 408 (Minn. 1997)........................................................................... 13

*Specialized Tours, Inc. v. Hagen*,
    392 N.W.2d 520 (Minn. 1986)........................................................................... 13

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003)......................................................................................... 17

*Teska v. Potlatch Corp.*,
    184 F. Supp. 2d 913 (D. Minn. 2002)................................................................ 7

*Thunander v. Uponor, Inc.*,
    887 F. Supp. 2d 850 (D. Minn. 2012)................................................................ 7

*Trost v. Trek Bicycle Corp.*,
    162 F.3d 1004 (8th Cir. 1998) ........................................................................... 6

*Wagner v. Hesston Corp.*,
    450 F.3d 756 (8th Cir. 2006) ............................................................................. 6

*Westbrock v. Marshalltown Mfg. Co.*,
    473 N.W.2d 352 (Minn. App. 1991)............................................................ 7, 12

**Statutes**

Minn. Stat. §325F.67 ............................................................................................. 14

Minn. Stat. §549.191 ............................................................................................. 15

Minn. Stat. §325D.44(13) ...................................................................................... 14

Minn. Stat. §549.20(b) ........................................................................................... 16

Minn. Stat. §604.01 ............................................................................................... 17

N.J. Stat. Ann. §2A:15–5.12 ................................................................................. 16

N.J. Stat. Ann. §2A:58C–5(c) ............................................................................... 16

Utah Code Ann. §78B-8-203 ................................................................................. 16

## I.    STATEMENT OF FACTS

### A.    PLAINTIFF'S ALLEGATIONS

Minnesota resident Brad Martin, filed his lawsuit on May 14, 2015, against defendants Actavis, Inc., Actavis Pharma, Inc., and Actavis Laboratories UT, Inc.[1] (Short Form Complaint ("SFC"), ¶4.)  Mr. Martin alleges a myocardial infarction ("MI") from his use of Androderm.  (*Id.*, ¶14.)  Plaintiff asserts causes of action for strict liability – design defect, strict liability – failure to warn, negligence, negligent misrepresentation, breach of express and implied warranty, fraud, redhibition, consumer protection, and unjust enrichment, adopting allegations from the Fourth Amended Master Long Form Complaint ("FAMLC").  (*Id.*, ¶17.)  Plaintiff requests compensatory and punitive damages.  (*Id.*)

### B.    PLAINTIFF'S MEDICAL HISTORY, PRESCRIPTION FOR AND USE OF ANDRODERM

Brad Martin, ███████████████████, was 52 at the time of the MI he claims was caused by Androderm.  Before his MI, ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[1] LuAnn Martin's loss of consortium claim was voluntarily dismissed on October 26, 2017. Plaintiff's claims against Actavis plc and Watson Laboratories, Inc., were voluntarily dismissed on November 16, 2015.  Anda, Inc., was voluntarily dismissed on January 24, 2018.

[2] All "Ex." references are to the exhibits attached to the Declaration of Jeffrey D. Geoppinger unless otherwise noted.

prescribed Androderm.  (Martin Dep., p. 144:21-24, Ex. 3.)



(VA Rec., 000002, Ex. 5.)  Plaintiff never saw or spoke with Dr. Firestone, who is deceased, at any time between his first prescription for Androderm and his MI.  (Martin Dep., p. 172:19-23, Ex. 3.)  Plaintiff does not recall any physician or nurse giving him any warnings regarding Androderm.  (*Id.*, p. 171:13-16.)   Plaintiff did not see any promotional materials for Androderm before his prescription for Androderm.  (*Id.*, pp. 125-27; 130:3-131:16.)

### C.   PLAINTIFF'S MI

(Corser Dec., ¶ 2, Ex. B thereto, pp. 5-7, 9.)

### D.   ANDRODERM

Androderm® is a testosterone transdermal system approved by FDA on September 29, 1995.[3]  It is indicated for replacement therapy in adult males for conditions associated with a de-

---

[3]The NDA was submitted by Theratech, Inc., on September 29, 1994.  After it was acquired by Watson Pharmaceuticals, Inc., in 1999, Theratech, Inc., changed its name to Watson Laboratories, Inc.

ficiency or absence of endogenous testosterone. The initial approval was for a 2.5 mg strength. Androderm's labeling on September 29, 1995, tracked FDA's 1981 class labeling guidance for androgen products.   On October 25, 1996, FDA approved a supplemental NDA ("sNDA") for a 5 mg strength. On October 20, 2011, FDA approved an sNDA for a 2 mg/day patch and 4 mg/day patch.[4]   That approval included a change to the labeling to comply with the Physician Labeling Rule.   On April 26, 2012, FDA approved a revised and updated label for Androderm. From September 29, 1995, through October 19, 2012, when Mr. Martin was prescribed TRT, Androderm followed class labeling for TRT products.   (Declaration of David Feigal, Jr., M.D. ("Feigal Dec.), Ex. A thereto, pp. 25-27, 30.)

FDA approved Androderm because Actavis Utah provided data satisfactory to FDA demonstrating that Androderm raised testosterone blood levels in men with conditions associated with a deficiency or absence of endogenous testosterone to level that was in the normal range. Testosterone deficiency, also known as hypogonadism, has been associated with increased mortality in men and a significant decrease in quality of life ranging from sexual dysfunction to metabolic and musculoskeletal complications.   (Declaration of Tung-Chin Hsieh, M.D. ("Hsieh Dec."), Ex. A thereto, p. 2.)   Hypogonadism results from testicular dysfunction (primary hypogonadism), dysfunction at the hypothalamic and pituitary gland (HPG) axis (secondary hypogonadism) or a combination of the two.   There are multiple causes of testicular dysfunction and there are multiple causes of dysfunction of the HPG axis.[5]   Aging is a condition associated

---

After the transaction between Watson Pharmaceuticals, Inc., and Actavis Group that closed in October 2012, Watson Laboratories, Inc., changed its name to Actavis Laboratories UT, Inc.  ("Actavis Utah").

[4]The labeling approved by FDA on October 20, 2011, included information not only about the new 2 mg and 4 mg strengths, but also about the 2.5 and 5 mg strengths. On October 24, 2011, an sNDA was submitted to discontinue the 2.5 and 5 mg strengths and update the Androderm labeling to reflect the discontinuation. FDA approved that sNDA, including the updated labeling, on April 26, 2012.

[5] Through the years, the Androderm package insert and the class labeling for TRT products have included different versions of non-exclusive listings of causes of primary and secondary hypogonadism in the Indications and Usage section.

with hypogonadism that most likely occurs as a result of testicular dysfunction, but there also are data suggesting that age associated hypogonadism is a combination of primary and secondary hypogonadism.  (Hsieh Dec., Ex. A, p. 4; Feigal Dec., Ex. A, p. 25, n.59; Declaration of Justin Victoria ("Victoria Dec."), Ex. A thereto, p. 21, n.66.)

When Actavis Utah submitted its sNDA for the approval of the two new strengths of 2 mg/day patch and 4 mg/day patch, it had to demonstrate the efficacy of the new patch strengths. Specifically, Actavis Utah had to perform studies to show that use of the 2 mg and 4 mg patches restored the testosterone levels in men who had a deficiency or absence of endogenous testosterone (i.e., who were hypogonadal) to levels in the normal range.  The data from the studies demonstrated that use of the new strengths restored testosterone levels to the normal range (300 ng/dl to 1130 ng/dl) in 97% of the study subjects.

Actavis Utah and Actavis Pharma, Inc. promoted Androderm for use in accordance with its FDA-approved indication.  Specifically, Androderm was promoted as raising testosterone blood levels to the normal range in men for conditions associated with an absence or deficiency of endogenous testosterone.  (Victoria Dec., Ex. A, p. 18.)  FDA did not object or take any enforcement action with respect to Androderm during the time Actavis Utah or Actavis Pharma was promoting or marketing the product up through Mr. Martin's prescription.  (*Id.*, p. 23.)

## II.    LAW AND ARGUMENT

### A.    PLAINTIFF CANNOT PROVE CAUSATION

Summary judgment is proper if plaintiff cannot prove a required element of his claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Plaintiff's claims, no matter how titled, require proof that plaintiff's use of Androderm was a substantial factor in causing his MI.  *See Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995) (defendant entitled to summary judgment as a matter of Minnesota law when record reflects lack of proof on an essential element of

plaintiff's claim).[6] Defendants have filed a motion to exclude the general and specific causation opinions of plaintiff's experts. Without those experts, plaintiff cannot prove causation. *See Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1009 (8th Cir. 1998); *Atwater Creamery Co. v. Western Nat. Mut. Ins. Co.*, 366 N.W.2d 271, 275 (Minn. 1985) (expert testimony required when acts or omissions complained of are not within the general knowledge and experience of lay persons). The motion to exclude should be granted and, as a result, plaintiff's SFC should be dismissed because plaintiff cannot prove causation.

## B. PLAINTIFF'S DESIGN DEFECT CLAIMS SHOULD BE DISMISSED

Plaintiff has asserted strict liability and negligence claims for design defect. Plaintiff's design defect claims are preempted under federal law, as discussed in defendants' motion for summary judgment based on federal preemption (the "Preemption Motion") filed contemporaneously. They also are barred under state law.

The same standard, a "reasonable care balancing test,'' applies to strict liability and negligent design defect claims. *Bilotta v. Kelley Co*., 346 N.W.2d 616, 622 (Minn. 1984). Plaintiff is required to prove Androderm was in a defective condition unreasonably dangerous for its intended use and that the defect was the proximate cause of plaintiff's alleged injury. *Id.* at 623 n.3. To establish a prima facie case that a product is unreasonably dangerous, a plaintiff normally has to produce evidence of the existence of a feasible, alternative safer design. *Kallio v. Ford Motor Co.*, 407 N.W.2d 92, 96 (Minn. 1987). The exception to that rule is the "rare case" where a product "should be removed from the market rather than redesigned." *Id*. at 97 n.8; *see also Wagner v. Hesston Corp.*, 450 F.3d 756, 760 (8th Cir. 2006). This is not such a rare case. Plain-

---

[6] *Johnson v. Zimmer, Inc*, No. Civ. 02-1328, 2004 WL 742038, *6 (D. Minn. Mar. 31, 2004) ("Causation is an indispensable element of [plaintiff's] case, regardless of the theory on which he proceeds."); *Bryan v. Kisson*, 767 N.W.2d 491, 495-96 (Minn. App. 2009) (affirming grant of motion for judgment as matter of law because plaintiff unable to prove causal link to alleged damages).

tiff has not asserted that Androderm should be removed from the market. To the contrary, plaintiff asserts that Androderm is properly prescribed for hypogonadal men; plaintiff's theory is that Androderm should only be prescribed for certain causes of primary and secondary hypogonadism. (FAMLC, ¶¶74-77.)  Plaintiff has no evidence of a design defect, a safer alternative design, or that a design defect proximately caused him injury.  None of plaintiff's experts has opined there is a design defect in Androderm, described a feasible, alternative design or opined that a design defect in Androderm caused injury to plaintiff. *See, e.g., Teska v. Potlatch Corp.*, 184 F. Supp. 2d 913, 921-922 (D. Minn. 2002) (expert testimony regarding defect required when issues are outside knowledge and experience of lay persons). Plaintiff cannot establish the elements of his design defect claims and the claims should be dismissed.

### C.     PLAINTIFF'S FAILURE-TO-WARN CLAIMS SHOULD BE DISMISSED

Plaintiff also pled strict liability and negligence claims for an alleged failure to warn. Plaintiff's failure-to-warn claims are preempted under federal law, as described in the Preemption Motion, and they are barred under state law.

Strict liability and negligent failure to warn claims are analyzed using the same standard. *Bilotta*, 346 N.W.2d at 622.[7]  To succeed on his failure-to-warn claim, plaintiff must establish defendants had a duty to warn, a breach of that duty, and proximate causation.  *See, e.g.*, *Lubbers*, 539 N.W.2d at 401 (essential elements of negligence claim); *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 869 (D. Minn. 2012)  (elements of negligent failure-to-warn claim under Minnesota law.  In order to pursue his failure to warn claims, plaintiff must prove that Androderm was defective and unreasonably dangerous because of the absence of the warnings he ad-

---

[7] *See also Holm v. Sponco Mfg., Inc.*, 324 N.W.2d 207, 215 (Minn. 1982) ("[W]here the strict liability claim is based on ... failure to warn, … there is essentially no difference between strict liability and negligence."); *Westbrock v. Marshalltown Mfg. Co.*, 473 N.W.2d 352, 356 (Minn. App. 1991) ("*Bilotta* merged strict liability, negligence, and implied warranty remedies into a single products liability theory").

vocates. *Johnson*, 2004 WL 742038, *7 (citing *Holm*, 324 N.W.2d at 212-13).

Plaintiff asserts defendants should have "warned" (1) about the alleged risk of major adverse cardiovascular events (MACE) from Androderm use; and (2) that they had not sufficiently studied or tested an alleged risk of cardiovascular events in men with "age-related" hypogonadism. (Deposition of Peggy Pence, Ph.D., ("Pence Dep."), pp. 185-197, Ex. 11.)

Minnesota applies the learned intermediary doctrine, under which a prescription drug manufacturer's duty to warn is satisfied by warning the prescribing physician rather than the patient who uses the drug. *See Mulder v. Parke Davis & Co.*, 181 N.W.2d 882, 885 n.1 (Minn. 1970). A manufacturer does not have a duty to communicate any and all information that might affect a decision to use one of its products. *Kapps v. Biosense Webster, Inc.*, 813 F. Supp. 1128, 1153 (D. Minn. 2011). "The duty to warn has been described as: (1) The duty to give adequate instructions for safe use; and (2) the duty to warn of dangers in improper usage." *Frey v. Montgomery Ward & Co.*, 258 N.W.2d 782, 787 (Minn. 1977). A manufacturer also has a duty to provide warnings of foreseeable risks. *See Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 924 (Minn. 1986). "[W]hether a legal duty to warn exists is a question of law for the Court—not one for jury resolution." *Id*.

The MACE "warning" Dr. Pence alleges defendants should have given is the language added to the Androderm label in mid-2015. (Pence Dep., pp. 194-95, Ex. 11.) The language is:

> To date, epidemiologic studies and randomized controlled trials have been inconclusive for determining the risk of major adverse cardiovascular events (MACE) such as non-fatal myocardial infarction, non-fatal stroke, and cardiovascular death, with the use of testosterone compared to non-use. Some studies, but not all, have reported an increased risk of MACE in association with use of testosterone replacement therapy in men. Patients should be informed of this possible risk when deciding whether to use or continue to use ANDRODERM.

(Androderm Package Insert, Rev. 5/2015, Ex. 10.)

Plaintiff's "warning" language reflects a determination that Androderm has not been

shown to be defective or unreasonably dangerous because of any risk of MACE. There is no cause of action available to plaintiff for failure to warn about MACE if Androderm was not defective or unreasonably dangerous because of a risk of MACE. *Kapps*, 813 F. Supp. 2d. at 1153. The "warning" advocated by plaintiff is not about a known danger associated with Androderm. *See, e.g., Kruszka v. Novartis Pharms. Corp.*, 19 F. Supp. 3d 875, 894 (D. Minn. 2014) (pharmaceutical company has duty to warn about known dangers associated with product). Therefore, defendants did not have a duty to provide the MACE "warning" plaintiff advocates.[8]

Similarly, defendants did not have a duty to warn that an alleged risk of MACE had not been studied in men using TRT.[9] The alleged non-performance of studies did not make Androderm defective or unreasonably dangerous. And, a "warning" about an alleged non-performance of studies is not an instruction for safe use, a warning about dangers inherent in improper usage, or a warning about a risk. And because Minnesota does not recognize a duty to study independent of a duty to warn, *Huggins v. Stryker Corp.*, 932 F. Supp. 2d 972, 987 n.15 (D.Minn. 2013), there can be no independent duty to "warn" that studies have not been performed. Accordingly, summary judgment is proper on plaintiff's failure-to-warn claim because plaintiff cannot establish that defendants had a duty to provide the warnings plaintiff advocates. *Giorvigen v. Cirrus Design Corp.,* 816 N.W.2d 572, 582 (Minn. 2012); *Germann,* 395 N.W.2d at 924-25.

Plaintiff also cannot prove the proximate causation element of his claim. First, plaintiff must prove his prescribing doctor, Dr. Firestone, read and relied on the Androderm package insert in deciding to prescribe Androderm for him. If plaintiff cannot prove that predicate requirement, any alleged inadequacy in the Androderm package insert is non-causal as a matter of

---

[8] Actavis data did not support the conclusion that there was a risk of MACE from Androderm. Between 2000 and October 19, 2012, when plaintiff received his first Androderm patch, Actavis had received a total of two MACE reports, both in 2001. (Feigal Dec., Ex. A, p. 40, n.96.)

[9] Actavis does not agree that the risk of MACE in men using testosterone replacement therapy had not been studied, or sufficiently studied.

law. *Johnson*, 2004 WL 742038 at *9-10; s*ee also J&W Enters. v. Econ. Sales, Inc.*, 486 N.W.2d 179, 181 (Minn. App. 1992) (failure to read warning precludes warning claim).[10]

Dr. Firestone has passed away. There are no notations in the medical records indicating that Dr. Firestone read the Androderm package insert or relied on it in prescribing Androderm to plaintiff. Any assertion that he read the Androderm package insert or relied on it is speculation, which cannot preclude summary judgment. *See, e.g.*, *Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367, 371 (Minn. 2008) (speculation cannot be used to avoid summary judgment); *De-Courcy v. Trustees of Westminster Presbyterian Church, Inc. of Minneapolis,* 134 N.W.2d 326, 328 (Minn. 1965) (possibility is not enough to establish proximate causation); *Johnson v. Van Blaricom*, 480 N.W.2d 138, 140 (Minn. App. 1992) (party cannot rely on speculation to demonstrate genuine issue of fact in response to summary judgment motion). Because there is no evidence that Dr. Firestone relied on the Androderm labeling when prescribing Androderm to plaintiff, plaintiff cannot prove causation, entitling defendants to judgment as a matter of law.

Second, plaintiff must prove that Dr. Firestone would not have prescribed Androderm if Dr. Firestone received the warnings plaintiff advocates. *See Mulder*, 181 N.W.2d at 885; *Bruzer v. Danek Medical, Inc.,* No. CIV. 3-5-971, 1999 WL 613329, *6 (D. Minn. Mar. 8, 1999). Plaintiff will have no evidence to satisfy his burden. There is no evidence in the medical records and no possibility of testimony to that effect from Dr. Firestone. For that additional reason, plaintiff cannot prove proximate causation and defendants are entitled to summary judgment on plaintiff's failure-to-warn claims.

---

[10] *See also Marko v. Aluminum Co. of Amer.*, No. CX-84-789, 1994 WL 615005, *2 (Minn. App. Nov. 8, 1994) (plaintiff's testimony that it was his practice not to read warnings and that he did not read the included warnings precluded claim for failure to provide adequate warning); *Johnson v. Niagara Machine & Tool Works*, 666 F.2d 1223, 1225 (8th Cir. 1981) ("an issue as to the adequacy of a warning necessarily presupposes that the operator has read the warning") (applying Minnesota law).)

### D.   PLAINTIFF'S OTHER NEGLIGENCE CLAIMS SHOULD BE DISMISSED

Plaintiff appears to assert a negligent failure-to-test claim.  However, an alleged failure to test does not give rise to independent negligence claim in Minnesota.  *Huggins*, 932 F. Supp. 2d at 987 n.15. To the extent plaintiff intends his failure-to-test assertions to be part of his design defect or failure-to-warn claims, defendants explained why those claims should be dismissed.

The negligence allegations plaintiff adopted from the FAMLC include allegations of "negligent marketing," "off-label marketing," and "misbranding." In addition, plaintiff's expert, Peggy Pence, has opined that Actavis promoted Androderm "off-label."  As explained in the Preemption Motion, any claims plaintiff is attempting to pursue for "off-label marketing" or "misbranding" are preempted and barred.  Courts have recognized that "negligent marketing" claims based on allegations of "off-label" promotion or marketing are not state-law claims. They are claims alleging failure to comply with the FDCA and preempted. *See, e.g., Houston v. Medtronic, Inc.*, 957 F. Supp. 2d 1166, 1178 (C.D. Cal. 2013) (negligence claim based on off-label promotion is implied preempted); *Caplinger v. Medtronic, Inc.,* 921 F. Supp. 2d 1206, 1219-20 (W.D. Okla. 2013) ("'off-label use' is a creature of FDCA") and preempted by 21 U.S.C. §337(a). Further, there is no evidence Dr. Firestone saw or relied on Androderm marketing or promotion materials. *See Bruzer*, 1999 WL 613329, at *6 (plaintiff's inability to show prescribing physician's reliance barred any claim asserted for improper marketing and promotion").[11]

### E.   PLAINTIFF'S EXPRESS WARRANTY, IMPLIED WARRANTY, NEGLIGENT MISREPRESENTATION, FRAUD, REDHIBITION, CONSUMER FRAUD AND UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED

All these claims are unsupported either by the law, the facts, or both.

---

[11] Under the learned intermediary doctrine, the proper inquiry for plaintiffs' claims are representations, promises, warranties, or other statements allegedly made to Dr. Firestone. *Mulder*, 181 N.W.2d at 885 n.1.  However, it also is true that Mr. Martin did not see any Androderm promotional items. He recalled seeing only television ads for a gel testosterone product with a pump and an underarm deodorant-like product.  (Martin Dep., pp. 125:12-127:2,130:3-131:16, Ex. 3.)  Androderm is neither of those products. It is a patch product, and defendants did not do television advertising for Androderm.

**Express and Implied Warranty:**  Plaintiff asserts a claim for breach of the implied warranty of merchantability. Plaintiff does not have any admissible evidence that any Androderm patch he used was not "fit for the ordinary purpose" for which Androderm is used, (i.e., raising to the normal range blood testosterone levels in men determined by their prescribers to be hypogonadal), as he is required to demonstrate.  *See, e.g., Crenlo v. Austin-Romtech*, No. A03-851, 2004 WL 948352, *6 (Minn. App. May 4, 2004) (affirming summary judgment on implied warranty claim where appellant failed to present evidence product was unfit for general purpose of which it was manufactured). None of plaintiff's experts provide that opinion. More fundamentally, there is no separate breach of warranty claim available to plaintiff.  His breach of warranty claim merges into his strict liability claims and should be dismissed for the same reasons.  *See, e.g., Westbrock*, 473 N.W.2d at 36.

Plaintiff alleges an express warranty claim based on "affirmations of fact or promises made by the seller to the buyer" that "became part of the basis of the bargain" upon which he relied in using Androderm.  (FAMLC, ¶¶530-532.)  However, there is and will be no evidence of affirmation of fact or promise made by any defendants to Dr. Firestone.  Accordingly, there is no evidence supporting plaintiff's allegations and plaintiff's express warranty claim should be dismissed.  *See, e.g., Johnson*, 2004 WL 742038, at *11; *Riley v. Cordis Corp.,* 625 F. Supp. 2d 769, 788 (D. Minn. 2009).

**Negligent Misrepresentation and Fraud Claims:**  Plaintiff cannot prevail on his negligent misrepresentation claim (Count IV) because Minnesota does not recognize a claim for negligent misrepresentation involving a risk of physical harm.  *Smith v. Brutger Cos*., 569 N.W.2d 408, 414 (Minn. 1997); *Forslund v. Stryker Corp*., Civ. No. 09-2134, 2010 WL 3905854, *6 (D. Minn. Sept. 30, 2010). A second reason plaintiff cannot prevail on his negligent misrepresentation claim is that there is no evidence of any representation (much less any misrepresentation) by

defendants to Dr. Firestone, there is no evidence of reliance, and there is no evidence of proximate causation.[12] For those reasons, individually and collectively, plaintiff's negligent misrepresentation claim is barred. *Smith*, 569 N.W.2d at 413.

Neither can plaintiff prevail on his fraudulent misrepresentation claim (Count VII). In order to succeed on that claim, plaintiff must prove, among other requirements, there was a fraudulent misrepresentation and action in reliance on that fraudulent misrepresentation causing him injury. See *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn. 1986); *Flynn v. Amer. Home Products Corp.*, 627 N.W.2d 342, 349 (Minn. App. 2001). Because of the learned intermediary doctrine, plaintiff must prove defendants made a fraudulent representation to Dr. Firestone, that Dr. Firestone prescribed Androderm in reliance on the alleged fraudulent representation, and that the allegedly fraudulent representation proximately caused plaintiff's MI. There is no such evidence and plaintiff's fraud claim should be dismissed.

**Redhibition, Consumer Protection, and Unjust Enrichment:** There is no claim for redhibition under Minnesota law. It is a claim unique to Louisiana law, which is not applicable here. Further, even under Louisiana law, redhibition is not available as a remedy to recover personal injury damages. See, e.g., *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997) (redhibition is not a viable theory in personal injury cases).

In support of his consumer protection claim (Count IX), plaintiff alleges defendants violated Minn. Stat. § 325F.67 (Minnesota False Statement in Advertising Act – the "MFSAA") and Minn. Stat. §325D.44(13) *et seq*. (Minnesota Deceptive Trade Practices Act – the "MDPTA"). (FAMLC ¶ 619.) Plaintiff does not allege irreparable harm or threat of future harm and plaintiff does not request injunctive relief. Instead, plaintiff requests damages, costs, and attorney fees.

---

[12] There also is no evidence of any representation to plaintiff, reliance by plaintiff, or proximate causation that could possibly support an assertion that a negligent or fraudulent misrepresentation was made by defendants to plaintiff about Androderm, even if the learned intermediary doctrine was ignored.

(FAMLC ¶ 624). There is no private right of action under the MFSAA. The right and duty to en-force the statute is "expressly imposed on the attorney general," and county attorneys have the right and duty to prosecute such claims. Minn. Stat. §325F.67. The sole remedy for violation of the MDTPA is injunctive relief. *See, e.g., Dennis Simmons, D.D.S., P.A. v. Modern Aero, Inc.*, 603 N.W.2d 336, 339 (Minn. App. 1999) ("[W]e affirm the district court's conclusion that the DTPA provides only injunctive relief...."). Plaintiff does not request injunctive relief under the MDTPA. The words "injunctive relief" do not appear anywhere in the "Consumer Fraud" allega-tions he adopted from the FAMLC. There is no allegation of irreparable harm. Instead, plaintiff asserts he has "suffered ascertainable loss and damages" and that defendants are liable for "com-pensatory and punitive damages to the extent available." Plaintiff's MDTPA claim is barred. *See, e.g., Dennis Simmons*, 603 N.W.2d at 339 ("because appellant pursued damages, not an injunc-tion, he has not stated a claim for which relief could be granted.") For those reasons, plaintiff's consumer fraud claims should be dismissed.[13]

Plaintiff's unjust enrichment claim also should be dismissed. Unjust enrichment is an eq-uitable remedy and it is not available where there is an adequate legal remedy. *See ServiceMas-ter of St. Cloud v GAB Business Services, Inc.*, 544 N.W.2d 302, 305 (Minn. App. 1996); *see al-so Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 854 (8th Cir. 2014). Plaintiff is not entitled to any remedy against defendants, but he seeks a legal remedy in the form of damages. If, contrary to defendants' view, plaintiff were to prevail on any of his claims, he has an adequate legal remedy (compensatory damages), which he has repeatedly requested throughout his SFC. *Finn v. Moyes*, No. 14-1293, 2017 WL 1194192, *16-17 (D. Minn. Mar. 30, 2017) (holding "an unjust enrichment award could not survive because an 'adequate legal

---

[13]Plaintiff's consumer claims are based on allegations that the Minnesota "medical community" relied on alleged misrepresentations and omissions. (FAMLC ¶ 621.) Those are simply additional allega-tions for which plaintiff has no evidence. Summary judgment is appropriate for that reason as well.

remedy was available.'" (citations omitted)).

**F.     PLAINTIFF'S CLAIMS AGAINST ACTAVIS, INC., SHOULD BE DISMISSED**

Actavis, Inc., n/k/a Allergan Finance, LLC, a holding company, has not manufactured or sold prescription drug products, including Androderm.  (Declaration of James D'Arecca, ¶¶ 3, 5.)  The claims asserted by plaintiff are product liability claims for alleged defects in Androderm. Under Minnesota law, those claims may be available to a plaintiff against the manufacturer and, subject to Minn. Stat §544.4, a non-manufacturer seller.  *See, e.g., Frey,* 258 N.W.2d at 788. The manufacturer of Androderm was Actavis Utah, a defendant in this case, and Androderm has been sold by Actavis Pharma, another defendant located in New Jersey. (*Id.*, ¶¶ 6-9) There is no possible basis for any claim against Actavis, Inc., and it should be dismissed.

**G.     PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES SHOULD BE STRICKEN**

Plaintiff has requested punitive damages. Three state laws (in additional to federal constitutional law) potentially could govern plaintiff's punitive damage request. Plaintiff's request is barred under the laws of all three states.  Plaintiff allegedly purchased and used Androderm in Minnesota. The Minnesota punitive damages statute (1) does not permit a plaintiff to seek punitive damages when commencing a civil action, (2) requires plaintiffs to make a motion to amend to add a request for punitive damages, and (3) requires a court to find (after a hearing if necessary) that the necessary prima facie showing has been made before amending the complaint to add the punitive damages request. *See* Minn. Stat. §549.191.  Plaintiff did not satisfy those requirements and his claim is barred.

Actavis Pharma, which has sold Androderm, is located in New Jersey. Punitive damages are barred under New Jersey law if the damages are for injuries from use of a drug "subject to premarket approval … by the federal Food and Drug Administration under the "Federal Food, Drug, and Cosmetic Act," and approved by FDA. *See* N.J. Stat. Ann. §2A:58C–5(c).  It is undis-

puted Androderm was subject to premarket approval and FDA-approved. (FAMLC ¶ 84.)

Actavis Utah, which was both the manufacturer and the Androderm NDA holder, is located in Utah, which has a statute substantively identical to New Jersey's statute. *See* Utah Code Ann. §78B-8-203. Thus, plaintiff's punitive damage claim is barred under Utah law.

In addition, plaintiff cannot present evidence to support an award of punitive damages. Minnesota law requires plaintiff to show by clear and convincing evidence that defendants showed a "deliberate disregard for the rights or safety of others," which requires plaintiff to prove that defendants had "knowledge of facts or intentionally disregarded facts that create a high probability of injury to the rights or safety of others." Minn. Stat. §549.20(b). Plaintiff must also show defendants "(1) deliberately proceed[ed] to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or (2) deliberately proceed[ed] to act with indifference to the high probability of injury to the rights or safety of others." *See* Minn. Stat. §549.20. Plaintiff cannot make that showing.

In order to recover for punitive damages under New Jersey law, plaintiff must prove by clear and convincing evidence actual malice or a wanton and willful disregard of persons who foreseeably might be harmed. *See* N.J. Stat. Ann. §2A:15–5.12. Plaintiff has no facts to discharge his burden of proof to meet the New Jersey requirements. The same is true under Utah law. Plaintiff must establish by clear and convincing evidence that defendants engaged in willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of the rights of others. Plaintiff cannot make that showing. Actavis Pharma and Actavis Utah manufactured and sold an FDA-approved drug. Plaintiff's allegations notwithstanding, there will be no evidence that FDA ever took enforcement action against defendants for the promotion of Androderm, that there was a "high probability" of MI from use of Androderm, or that defendants acted with a wanton and willful disregard of an al-

16

leged MI risk or reckless indifference to that alleged risk.

Finally, in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), the United States Supreme Court addressed the issue of what conduct could constitutionally be considered as the basis of a punitive damage award and the proper limits or extent of such an award. The *Campbell* Court found that punitive damages may be assessed only for "conduct directed toward the [plaintiff in this case]." *Id.* at 420. The alleged misconduct "must have a nexus to the specific harm suffered by the plaintiff." *Id.* at 409-410. In other words, "[a] defendant should be punished [only] for the conduct that harmed the plaintiff." *Id.* at 423. Here, there has been no evidence that defendants directed any conduct specifically toward plaintiff. For all those reasons, plaintiff's request for punitive damages should be dismissed.

### G.    PLAINTIFF'S OWN CONDUCT IS THE CAUSE OF HIS INJURIES

If the Court does not dismiss plaintiff's case, Actavis requests summary judgment in its favor on plaintiff's comparative fault. *See* Minn. Stat. §604.01. Actavis presented expert testimony that the fault of plaintiff was a substantial factor in causing plaintiff's MI. (*See* Corser Dec., ¶ 2, Ex. B., pp. 5-7, 9.) That expert testimony is unopposed. Plaintiff's specific causation expert, Dr. Ardehali, has not rebutted Dr. Corser's report and has not ruled out the condition and conduct identified by Dr. Corser as direct and substantial factors in causing plaintiff's MI. Therefore, there is no question of fact, and Actavis is entitled to judgment as a matter of law that plaintiff's fault was a direct cause and substantial factor in causing plaintiff's MI.

## III.    CONCLUSION

For the foregoing reasons, defendants' motion should be granted.

17

Dated: May 4, 2018

Respectfully Submitted,

/s/ Jeffrey F. Peck

Joseph P. Thomas
Jeffrey F. Peck
K.C. Green
Jeffrey D. Geoppinger
**ULMER & BERNE LLP**
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Phone: (513) 698-5000
Fax: (513) 698-5001
Email: jthomas@ulmer.com
Email: jpeck@ulmer.com
Email: kcgreen@ulmer.com
Email: jgeoppinger@ulmer.com

***Attorneys for Actavis, Inc., Actavis Pharma, Inc., and Actavis Laboratories UT, Inc.***

18

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2018, the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

/s/ Jeffrey F. Peck