UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | MDL No. 2545<br><br>Master Docket Case No. 1:14-cv-01748<br><br>Honorable Matthew F. Kennelly |
| THIS DOCUMENTS RELATES TO:<br><br>*Brad Martin, et al. v. Actavis, Inc.*<br>Case No. 15-cv-04292 | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Joseph P. Thomas
Jeffrey F. Peck
K.C. Green
Jeffrey D. Geoppinger
**ULMER & BERNE LLP**
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Phone: (513) 698-5000
Fax: (513) 698-5001
Email: jthomas@ulmer.com
Email: jpeck@ulmer.com
Email: kcgreen@ulmer.com
Email: jgeoppinger@ulmer.com

***Attorneys for Actavis Laboratories UT, Inc.
f/k/a Watson Laboratories, Inc., Actavis
Pharma, Inc., and Actavis, Inc., f/k/a
Watson Pharmaceuticals, Inc.***

## I. INTRODUCTION

Plaintiff begins his opposition to Actavis, Inc., Actavis Pharma, Inc., and Actavis Laboratories UT, Inc.'s summary judgment motion asserting that Actavis's director of regulatory affairs testified she was "terminated because she would not sign off on marketing pieces that she felt were off-label." (Plaintiffs' opposition to defendants' motion for summary judgment ("Opp."), p. 1.) Plaintiff insinuates the "marketing pieces" related to Androderm. He is wrong. Ms. Desai did not testify she was terminated because she objected to Androderm promotions. She admitted she does not know why she was terminated and admitted she was only 1 of about 1190 employees terminated. (Deepa Desai Deposition, pp. 138, 194 Ex. 1 to Doc. 71.) Also, the testimony plaintiff cites relates to employees signing off on submissions to FDA on her behalf, none of which involved Androderm. (*Id.*) What plaintiffs hope to gain by misrepresenting Ms. Desai's testimony is not hard to fathom, but it is inappropriate and should be disregarded.

## II. LAW AND ARGUMENT

Plaintiff indicates he is not pursuing a "failure-to-test" (Opp., p. 11), a negligent misrepresentation (*id.*, p. 12), or an unjust enrichment claim (*id.*, p. 13). Plaintiff never addressed his redhibition claim. Accordingly, those claims should be dismissed.

### A. PLAINTIFF CANNOT PROVE CAUSATION

Plaintiff incorrectly says that the "Actavis Defendants make no assertion that Mr. Martin cannot show causation." (Opp., p. 3.) He contends that once the defendants' motion to exclude his experts' is denied, he can show Androderm caused his myocardial infarction ("MI"). (*Id.*) Plaintiff ignores salient facts and his burden of proof. Plaintiff must present expert testimony to establish general and specific causation. *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1009 (8th Cir. 1998); *Atwater Creamery Co. v. Western Nat. Mut. Ins. Co.*, 366 N.W.2d 271, 275 (Minn. 1985). But, plaintiff lacks that testimony.

Mr. Martin was in his early 50s at the time of his MI. Plaintiff's general causation experts opine that TRT may increase the risk of MI in "older men." In opposing defendants' motion to exclude their experts' testimony, plaintiff acknowledges that the population of "older men" includes men who are 65 and older. (Doc. 66, p. 27.) Mr. Martin is not a member of that population. As a result, plaintiff does not have the expert testimony to establish general causation and without general causation, it really does not matter what Dr. Ardehali wants to say on the specific causation front. *See, e.g., In re Bausch & Lomb Inc. Contacts Lens Solution Prods. Liab. Litig.*, 693 F. Supp. 2d 515, 518 (D.S.C. 2010) ("[e]vidence concerning specific causation in toxic tort cases is admissible only as a follow-up to admissible general-causation evidence").[1] All plaintiff's claims require proof that Androderm can cause MIs in the population of which Mr. Martin is a member. Without that proof, plaintiff cannot prove causation.

### B. PLAINTIFF'S DESIGN DEFECT CLAIMS SHOULD BE DISMISSED

In opposing defendants' preemption motion, plaintiff admits he is not alleging a viable design defect claim.[2] (*See* Doc. 64, pp. 2-4.) Plaintiff's "design defect" claim is, in reality, a failure-to-warn claim. (*Id.*) As such, defendant's motion on this count must be granted.

### C. PLAINTIFF'S FAILURE-TO-WARN CLAIMS SHOULD BE DISMISSED

It is axiomatic that a precursor to stating any claim, including one for failure to warn, is the existence of a duty. Here, there is no duty. (Doc. 33, pp. 7-9.) Plaintiff does not address the

---

[1] *See also Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007); *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 881 (10th Cir. 2005) ("without general causation, there can be no specific causation"); *Dunn v. Sandoz Pharms. Corp.*, 275 F. Supp. 2d 672, 676 (M.D.N.C. 2003) ("If a plaintiff is not able to establish general causation, it is unnecessary to consider whether the plaintiff can establish specific causation." (citing *Raynor v. Merrell Pharms, Inc.*, 104 F.3d 1371, 1376 (D. D.C. 1997))); *Mack v. AmerisourceBergen Drug Corp.*, 671 F. Supp. 2d 706 (D. Md. 2009) (proof of general causation is prerequisite to specific causation).

[2] Moreover, plaintiff lacks expert testimony of any purported defect in Andoderm's design, as well as expert testimony that the unidentified defect caused plaintiff's injuries. Without that testimony, plaintiff cannot satisfy his burden to establish a design defect claim. *See, e.g., Teska v. Potlatch Corp.*, 184 F. Supp. 2d 913, 921-922 (D. Minn. 2002) (expert testimony regarding defect required when issues are outside knowledge and experience of lay persons).

absence of duty. (Opp., pp. 4-5.) Instead, he makes the incredible claim that defendants did not challenge his "ability to demonstrate that the company knew or should have known of the cardiovascular risks presented by Androderm" while at the same contradicting his own statement: "Actavis data did not support a conclusion that there was a risk of MACE from Androderm." (*Id.*, p. 4.) And, while he does not dispute the absence of data, he claims that he has "extensive evidence demonstrating they did." (*Id.*, p. 4.) That evidence consists solely of Dr. Pence's opinion that defendants "failed to properly warn patients of Androderm's propensity to cause cardiac events…." (*Id.*, pp. 4-5.) The opinion does not even address the issue. Moreover, what Dr. Pence thinks she knows about what Actavis knew is irrelevant and wholly speculative.

Then, incredibly, plaintiff claims defendants do not challenge his ability to demonstrate the warning was inadequate. Defendants demonstrated in detail that the "warnings" plaintiff claims should have been on Androderm's labeling before he received his first prescription are not *warnings* within the meaning of Minnesota law. A short recap should help.

- Plaintiff claims defendants should have "warned" (1) about the alleged risk of major adverse cardiovascular events (MACE) from Androderm use; and (2) that they had not sufficiently studied or tested an alleged risk of cardiovascular events in men with "age-related" hypogonadism. (Dr. Pence Deposition, pp. 185-197, Ex. 11[3].)

- Minnesota law requires warnings of dangers and foreseeable risks. *Frey v. Montgomery Ward & Co.*, 258 N.W.2d 782, 787 (Minn. 1977); *Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 924 (Minn. 1986).

- The MACE warning plaintiff claims defendant should have given is the language added in mid-2015 by FDA: "To date, epidemiologic studies and randomized controlled trials *have been inconclusive for determining the risk* of major adverse cardiovascular events (MACE) such as non-fatal myocardial infarction, non-fatal stroke, and cardiovascular death, with the use of testosterone compared to non-use. Some studies, but not all, have reported an increased risk of MACE in association with use of testosterone replacement therapy in men. Patients should be informed of this possible risk when deciding whether to use or continue to use ANDRODERM." (Androderm Package Insert, Rev. 5/2015, Ex. 10 (emphasis added).)

The language is unequivocal: The evidence is inconclusive that a risk exists. Plaintiff wants to

---

[3] All "Ex." references are to the exhibits accompanying Docs. 43, 45, unless otherwise specified.

3

translate that into knowledge of a known risk. Yet, one does not equal the other. One cannot know what there is no evidence to determine.

Plaintiff also wants to equate the placement of FDA's 2015 language in the "Warnings and Precautions" section of the product label to a "warning" under Minnesota law. Again, they are not the same. FDA's regulations require "potential safety hazards" to appear in the "Warning and Precaution" section. 21 C.F.R. §201.57(c)(6). Moreover, FDA is not required to make any showing with regard to its election to place the 2015 language. In contrast, Minnesota requires warnings of known or knowable dangers and risks. *Frey*, 258 N.W.2d at 787; *Germann*, 395 N.W.2d at 924. FDA's addition of language to "Warnings" does not turn that language into a "warning" required under state law. Plaintiff has not demonstrated defendants had a duty to provide their warning. Plaintiff does not even deign to address his second alleged "failure to warn" because he cannot dispute that there is no duty to warn that the MACE risk had not been studied.

Plaintiff's attempt to satisfy his burden on proximate cause is astonishing. Plaintiff cobbles together "evidence" that he claims demonstrates both that "Dr. Firestone was aware of and was actively considering Andoderm's risk and benefits" and "Dr. Firestone was reading and relying on the warning …." (Opp., pp. 6-7.) No matter how favorably the facts are viewed in plaintiff's favor, the evidence he cites establishes none of what plaintiff is required to prove. Mr. Martin's "research on his own," does not speak to Dr. Firestone; not what he did, read, or relied on. The same is true of a cryptic notation by Nurse Hopkins that Mr. Martin "[v]erbalizes understanding of risk." (*Id.*, p. 6.) Plaintiff cannot avoid summary judgment by adding his own speculative gloss to that cryptic notation. *See, e.g.*, *Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367, 371 (Minn. 2008) (speculation does not avoid summary judgment).[4] Plaintiff's argument

---

[4] *See also DeCourcy v. Trustees of Westminster Presbyterian Church, Inc. of Minneapolis*, 134 N.W.2d 326, 328 (Minn. 1965) (possibility not enough to establish proximate causation); *Johnson v. Van Blaricom*, 480 N.W.2d 138, 140 (Minn. App. 1992) (party cannot rely on speculation).

4

simply confirms that he cannot prove the predicate requirement that his physician read or relied on Androderm's label. As a result, any alleged inadequacy in the Androderm package insert is non-causal as a matter of law. *Johnson*, 2004 WL 742038, *9-10.[5]

Trying to show that Dr. Firestone would not have prescribed Androderm if he had received the warnings plaintiff advocates, plaintiff resorts to "habit" assertions. (Opp., pp. 7-8.) That "habit" evidence consists solely of plaintiff's own undated declaration[6] in which he asserts he saw Dr. Firestone for approximately six years and during his visits, the doctor discussed medication risks with him. (*Id.*, pp. 7-8.) According to plaintiff that is sufficient to establish it was "Dr. Firestone's habit and practice to inform his patients of risks and benefits and to respect his patients' wishes." (*Id.*, p. 7.) Plaintiff misses the point. The issue is not whether Dr. Firestone discussed risks with his patients; the issue is whether Dr. Firestone would have changed his prescribing decision. Plaintiff's proffered declaration does not address that issue, nor can he.

Furthermore, plaintiff's declaration does not satisfy the requirements of Federal of Evidence 406 for the admission of habit "evidence." Only where

> the examples offered to establish a pattern of conduct or habit are numerous enough to base an inference of systematic conduct and to establish one's regular response to a repeated specific situation or, to use the language of a leading text, where they are sufficiently regular or the circumstances sufficiently similar to outweigh the danger, if any, of prejudice and confusion, that they are admissible to establish a pattern or habit.

*Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494 (4th Cir. 1977) (footnotes omitted) *cert. denied*, 434 U.S. 1020 (1978). The Seventh Circuit agrees. In *Thompson v. Boggs*, 33 F.3d 847, 854 (7th Cir. 1994), the court wrote:

---

[5] *See also J&W Enters. v. Econ. Sales, Inc.*, 486 N.W.2d 179, 181 (Minn. App. 1992) (failure to read warning precludes warning claim); *Marko v. Aluminum Co. of Amer.*, 1994 WL 615005, *2 (Minn. App. Nov. 8, 1994) (plaintiff's testimony his practice was to not read warnings and he did not read warnings precluded failure-to-warn claim); *Johnson v. Niagara Machine & Tool Works*, 666 F.2d 1223, 1225 (8th Cir. 1981) ("an issue as to the adequacy of a warning necessarily presupposes that the operator has read the warning") (applying Minnesota law).)

[6] Defendants move to strike Mr. Martin's declaration as it does not comply with 28 U.S.C. §1746.

5

> As the Advisory Committee noted in its Comment to Rule 406, habit "describes one's regular response to a repeated specific situation." "[B]efore a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Simplex, Inc. v. Diversified Energy Systems, Inc.*, 847 F.2d 1290, 1293 (7th Cir.1988).
>
> "The party offering the evidence must establish the habitual nature of the alleged practice. * * * Although there are no precise standards for determining whether a behavior pattern has matured into a habit, two factors are considered controlling as a rule: adequacy of sampling and uniformity of response. * * * The factors focus on whether the behavior at issue occurred with sufficient regularity making it more probable than not that it would be carried out in every instance or in most instances. * * * The requisite regularity is tested by the ratio of reaction to situations. * * * It is essential, therefore, that the regularity of the conduct alleged to be habitual rest on an analysis of instances numerous enough to [support] an inference of systematic conduct and to establish one's regular response to a repeated specific situation." *United States v. Newman*, 982 F.2d 665, 668 (1st Cir.1992), *cert. denied*, 510 U.S. 812 (1993) (quotations and citations omitted).

Mr. Martin does not satisfy the requirements. He does not provide any details about how many times he actually spoke with Dr. Firestone, how many times they discussed medications, or exactly what it was that Dr. Firestone said about those medications. Nor does Mr. Martin describe any situation where a new warning or limitation of use language was added to the labeling and what Dr. Firestone did in those circumstances. There simply is no foundation for showing that the language plaintiff advocates for addition to the label would have resulted in any action by Dr. Firestone or what that action would be. Moreover, Dr. Firestone did not conform to his purported "habit" in prescribing Androderm to plaintiff. They never spoke. Clearly, there was not the "semi-automatic" conduct required to show habit.

Failing on the other fronts, plaintiff tries to shift the burden of proof. His attempt must be rejected. It is not defendants burden to demonstrate either that the warnings were adequate or that his physician did not read or rely on them. Moreover, in his attempt to shift the burden of proof, plaintiff takes a run at purported distinctions in case law that supports the conclusion that a plaintiff cannot satisfy his burden of establishing proximate cause without evidence that his physician read or relied on the product label. (Opp., pp. 9-10.)

6

Finally, plaintiff tries to evade his burden to establish proximate cause with self-serving testimony that he researches his medications and would not have taken Androderm if he learned it posed cardiovascular risks. Plaintiff does not cite any authority that allows him to evade the learned intermediary doctrine and substitute his self-serving thought process for the prescriber. Plaintiff's burden is to prove that Dr. Firestone would not have prescribed Androderm. What research plaintiff conducted or the actions he might have taken are not relevant.

### D.  PLAINTIFF'S OTHER NEGLIGENCE CLAIMS SHOULD BE DISMISSED

Plaintiff's statement that "the company seems to indicate that Plaintiffs can show extensive off-label conduct.…" (*id.*, p. 11), is ludicrous. Nowhere do defendants make any such indication. Further, plaintiff knows defendants consistently have denied "off-label conduct" and submitted evidence demonstrating that Androderm promotion was within the label. (Justin Victoria Dec., Doc. 39-1, p. 26.) Finally, plaintiff's assertion that medical device cases do not support preemption of claims based solely on alleged violations of the FDCA and FDA's regulations continues his pattern of misstating the law. (Opp., p. 11.) One need only read *Buckman* and 21 U.S.C. 337(a) to understand the fallacy of plaintiff's contention. The preemption of claims based on purported off-label promotions is further discussed in defendant's preemption motion.

### E.  PLAINTIFF'S WARRANTY, FRAUD, AND CONSUMER FRAUD CLAIMS SHOULD BE DISMISSED

**Express and Implied Warranty:** Plaintiff thinks that simply repeating the same unsubstantiated assertion—that Dr. Firestone saw and relied on information about Androderm—he can avoid summary judgment on other claims, including his express warranty claim. (Opp., pp. 11-12.) Plaintiff does not offer evidence of any affirmation of fact or promise defendants made to Dr. Firestone. Further, plaintiff's assertion that breach of warranty claims are analyzed outside the learned intermediary doctrine and, therefore, Dr. Firestone's reliance is immaterial (*id.*, p. 12), is unsupported by the case he cites and adds nothing to his cause. Plaintiff's attempt to use a

7

"lens" for the claim that does not require proof of Dr. Firestone's reliance is telling. Even assuming, without agreeing to, plaintiff's "lens," he must demonstrate affirmations of fact or promises made by the seller that became part of the basis of the bargain relied upon in using Androderm. Mr. Martin has not identified any such affirmation of fact or promise. Without that evidence, his express warranty claim cannot stand. *See, e.g., Johnson*, 2004 WL 742038, at *11; *Riley v. Cordis Corp.,* 625 F. Supp. 2d 769, 788 (D. Minn. 2009).

Plaintiff's response related to his implied warranty claim is devoid of proof. Again, he merely states he "can show" evidence, but does not identify what that evidence might be. (Opp., p. 12.) It is time for plaintiff to step up with evidence. His conclusory assertions do not satisfy his burden on summary judgment.

**Fraudulent Misrepresentation:** Plaintiff contends his fraudulent misrepresentation claim is "entirely valid." (*Id.*) Here, again, however, plaintiff offers no evidence to support his claim. He makes conclusory statements relating to the "evidence" without identifying any of it. He also says there is no case law that supports application of the learned intermediary doctrine in this circumstance, but then says there *are* "three Minnesota decisions." (*Id.*) Plaintiff tries to distinguish those decision, but the fact remains that drug labeling is directed to physicians. As a result, it is incumbent on plaintiff to show a fraudulent representation to Dr. Firestone, that Dr. Firestone prescribed Androderm in reliance on the alleged fraudulent representation, and that the allegedly fraudulent representation proximately caused plaintiff's MI. Plaintiff offers no such evidence, only his conclusory statements.

**Consumer Protection:** Plaintiff agrees the sole remedy on a consumer protection claim is injunctive relief. (*Id.*) Referring to the rote listing in the "Prayer for Relief" in the Fourth Amended Master Complaint that is untethered to any claim, plaintiff contends he requested such relief. The only requested relief in his consumer protection claim is money damages. (Doc. 33.)

8

There is no mention of irreparable harm or injunctive relief. Also, plaintiff does not dispute there is no private right of action under Minnesota's False Statement in Advertising Act.

### F. PLAINTIFF'S CLAIMS AGAINST ACTAVIS, INC., SHOULD BE DISMISSED

Defendants did cite support for the dismissal of Actavis, Inc., who is neither the manufacturer nor the seller of Androderm. (James D'Arecca Declaration, ¶¶ 3, 5.) In Minnesota, plaintiff's claims are available only against the manufacturer and, subject to Minn. Stat. §544.4, a non-manufacturer seller. *See, e.g., Frey,* 258 N.W.2d at 788. Actavis, Inc., is neither.

### G. PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES SHOULD BE STRICKEN

Plaintiff asserts four states' laws (Minnesota, Utah, New Jersey, and Illinois) potentially could govern his punitive damage request. (Opp., p. 14.) There are only three states that have any connection with this controversy. Minnesota, plaintiff's state of residence; New Jersey, Actavis Pharma's principal place of business; and Utah, Actavis' Utah's principal place of business. How Illinois fits into the equation is unexplained.

Whether Minnesota's, New Jersey's, or Utah's law is applied, plaintiff's request cannot survive. Plaintiff admits he did not comply with Minnesota's punitive damages statute, but claims he "will complete the necessary steps … upon completion of discovery." (*Id.*) There is no relevant outstanding discovery and plaintiff's failure to comply with Minn. Stat. §549.191, bars his claim. New Jersey and Utah bar punitive damages in actions involving FDA-approved drugs. N.J. Stat. Ann. §2A:58C−5(c); Utah Code Ann. §78B-8-203. Androderm is FDA-approved.

Regardless of the law applied, plaintiff cannot satisfy his burden to recover punitive damages. There is no clear and convincing evidence that defendants showed a deliberate, reckless, or wanton and willful disregard for the rights or safety of others or acted with malice. Lacking that evidence, plaintiff turns to irrelevant information. For instance, plaintiff refers to a co-promotion agreement regarding Androgel. Plaintiff did not use Androgel, there is no evidence Dr. Firestone

saw or relied on any Androgel promotion in prescribing Androderm, and there is no evidence an Actavis sales representative called on Dr. Firestone regarding Androderm or Androgel.

Nor does plaintiff's reference to Deepa Desai's testimony support punitive damages. There is no evidence that Ms. Desai ever said to anyone on the internal Promotional Review Committee ("PRC") that Androderm was being promoted off-label. Also, it is undisputed that Ms. Desai approved and submitted to FDA numerous promotional items containing the exact indication statement she now attempts to characterize as improper, that for over eight years before Ms. Desai joined the PRC, Androderm promotional items with that same indication statement had been approved by Ms. Desai's predecessor and the PRC and submitted to FDA, and that FDA never objected in any way to those promotional items while it did object to promotional items from another manufacturer. (Victoria Dec., Doc. 39-1, pp. 16, 21-22, 24-25.)[7]

Finally, plaintiff does not address the requirements in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), that punitive damages may be assessed only for conduct directed toward plaintiff and there must be a causal nexus between the alleged improper conduct and the harm alleged. *Id.* at 409-10, 420. Plaintiff has not produced evidence that defendants directed any conduct towards him. There also is no evidence Dr. Firestone reviewed or relied on the Androderm label or any promotion in prescribing the product. As such, plaintiff's request for punitive damages should be dismissed.

### G. PLAINTIFF'S OWN CONDUCT IS THE CAUSE OF HIS INJURIES

Plaintiff did not address the argument that defendants are entitled to summary judgment based on his comparative fault. *See* Minn. Stat. §604.01. As a result, the evidence defendants

---

[7] Plaintiff makes numerous incorrect and irrelevant assertions with which defendants disagree. Page limits preclude defendants from addressing them in this reply, but for the reasons described here and in defendants' motion, plaintiff's punitive damage request is barred in any event. Defendants have described problems with assertions made in plaintiff's opposition in Defendants' Response to Plaintiff's LR 56.1 filed on the same date as this reply.

presented on that issue is unopposed, there is no question of fact, and defendants are entitled to judgment that plaintiff's fault was a direct cause and substantial factor in causing plaintiff's MI.

### III. CONCLUSION

For the foregoing reasons, defendants' motion should be granted.

Dated: June 22, 2018

Respectfully Submitted,

*/s/ Jeffrey D. Geoppinger*
Joseph P. Thomas
Jeffrey F. Peck
K.C. Green
Jeffrey D. Geoppinger
**ULMER & BERNE LLP**
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Phone: (513) 698-5000
Fax: (513) 698-5001
Email: jthomas@ulmer.com
Email: jpeck@ulmer.com
Email: kcgreen@ulmer.com
Email: jgeoppinger@ulmer.com

***Attorneys for Actavis, Inc., Actavis Pharma, Inc., and Actavis Laboratories UT, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2018, the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

<em>/s/ Jeffrey D. Geoppinger</em>