# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | ) MDL No. 2545 <br> ) <br> ) Master Docket Case No. 1:14-cv-01748 <br> ) <br> ) Honorable Matthew F. Kennelly |
| THIS DOCUMENTS RELATES TO: | ) <br> ) |
| *Brad Martin v. Actavis, Inc., et al.*, <br> Case No. 15-cv-04292 | ) <br> ) |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(a)

**TABLE OF CONTENTS**

**Page**

LEGAL STANDARD .................................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I.     No Reasonable Jury Could Find That Plaintiff Has Established A Failure To Warn Claim ................................................................................................................. 2

    A.     Actavis Had No Duty To Warn Plaintiff Of An Unknown Risk ........................... 2

    B.     No Reasonable Jury Could Find That Androderm's Failure To Warn Of A Hypothetical Cardiovascular Risk Was A Direct Cause Of Plaintiff's Heart Attack ........................................................................................................ 4

II.     Fraudulent Misrepresentation .............................................................................................. 6

III.     Plaintiff Has Not Offered Legally Sufficient Evidence That Androderm Was A Direct Cause Of His Heart Attack ........................................................................................ 8

IV.     Actavis Is Entitled To Judgment As A Matter Of Law On Plaintiff's Request For Punitive Damages ............................................................................................................ 9

CONCLUSION ............................................................................................................................. 10

Defendants Actavis Inc., Actavis Pharma Inc., Actavis Laboratories UT, Inc. (collectively "Actavis" or "Defendants") respectfully move for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure. Judgment should be granted for Actavis. *First*, because, based on the evidence presented at trial, judgment should be granted in the failure to warn claim because, Actavis had no duty to warn as a matter of law because, among other things, (1) as Plaintiff's own expert[s] confirm, there was no reasonable evidence of a causal association before the time of Martin's Rx (Tr. at 737:22–24); and (2) no reasonable juror could find that Martin would have heeded a different warning where Martin used an Rx with nearly identical warning to the one proposed here . . . . *Second*, judgment should be granted on all claims, because no reasonable jury could find that Androderm was a direct cause of Plaintiff's heart attack, where Plaintiff's own expert admits that any one of Mr. Martin's numerous, scientifically established risk factors were "sufficient to cause a heart attack" Tr. 636:14–16. *Third*, judgment should be entered on the fraudulent misrepresentation claim because no reasonable jury could find that Androderm was a direct cause of Plaintiff's heart attack, and no reasonable jury could find that plaintiff or his prescribing physician relied upon any fraudulent misrepresentation made by Actavis. Additionally, Plaintiff's request for punitive damages should be denied as a matter of law because there is no evidence that Actavis engaged in the type of malicious or wanton conduct needed to warrant punitive damages, or that there is a nexus between any such alleged conduct and Plaintiff's injury.

## LEGAL STANDARD

Judgment as a matter of law should be granted where, as here, a plaintiff has "been fully heard on an issue" and there is no "legally sufficient evidentiary basis" for a reasonable jury to find for the plaintiff. Fed. R. Civ. P. 50(a)(1). To avoid judgment as a matter of law, a plaintiff must "do more than argue that the jury might have disbelieved all of the defendant's witnesses.

Rather, the plaintiff must offer substantial affirmative evidence to support her argument." *Florek v. Vill. of Mundelein, Ill.*, 649 F.3d 594, 601 (7th Cir. 2011) (quoting *Heft v. Moore*, 351 F.3d 278, 284 (7th Cir. 2003)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986) ("some evidence" supporting party bearing the burden of proof will not avoid a directed verdict). If the evidence, viewed "through the prism of the substantive evidentiary burden," points to "but one reasonable conclusion," the Court should grant judgment as a matter of law. *Id.* at 250, 254. "[I]f the facts and inferences point so strongly and overwhelmingly in favor of defendants that the court is convinced reasonable men cannot arrive at a verdict contrary to one in their favor, granting of the motion is proper." *Panter v. Marshall Field & Co.*, 486 F. Supp. 1168, 1184 (N.D. Ill. 1980).

## ARGUMENT

**I. NO REASONABLE JURY COULD FIND THAT PLAINTIFF HAS ESTABLISHED A FAILURE TO WARN CLAIM**

Actavis is entitled to judgment as a matter of law, as it was under no duty to warn of an unknown cardiovascular risk, and Plaintiff cannot prove that the absence of the warning was a direct cause of his heart attack. Plaintiff's failure to warn claim requires proving by a preponderance of the evidence that (1) Actavis had a duty to warn; (2) Actavis breached that duty by providing an inadequate warning; and (3) the inadequate warning caused Plaintiff's injury. *Green Plains Otter Tail, LLC v. Pro-Environmental, Inc.*, 953 F.3d 541, 548 (8th Cir. 2020) (internal citations omitted).

**A. Actavis Had No Duty To Warn Plaintiff Of An Unknown Risk**

Under Minnesota law, a manufacturer's duty arises from the probability or foreseeability of the injury to the plaintiff. *Montemayor v. Sebright Prods, Inc.*, 898 N.W.2d 623, 629 (Minn. 2017) (quoting *Domagala v. Rolland*, 805 N.W.2d 14, 26 (Minn. 2011)). Foreseeability is a

2

threshold question for the Court to decide, unless the issue is close. *Domagala v. Rolland*, 805 N.W. 2d 14, 27 (Minn. 2011); *see also Whiteford ex. rel. Whiteford v. Yamaha Motor Corp., U.S.A.*, 582 N.W.2d 916, 918 (Minn. 1998) ("When the issue of foreseeability is clear, the courts, as a matter of law, should decide it.").

To determine whether a particular risk is foreseeable, courts "look to the defendant's conduct and ask whether it was objectively reasonable to expect the specific danger causing plaintiff's injury." *Montemayor v. Sebright Prods, Inc.*, 898 N.W.2d at 629. The Minnesota Supreme Court has held that "as matter of law [] an injury is not reasonably foreseeable when the 'undisputed facts, considered together,' established that the connection between the defendant's conduct and the plaintiff's injury was 'too attenuated.'" *Montemayor*, 898 N.W.2d at 629.

Despite the fact that Actavis only received two reports of major adverse cardiovascular events ("MACE"), Dr. Sharlin opined that Actavis should have included a warning of cardiovascular risk by 2011 (Tr. 8-11-21 PM, at 888:2-7) (Ex. 8.4). Dr. Sharlin bases that opinion largely on the 2010 Basaria study and the 2013 Xu study. That opinion is directly undercut by both the FDA and Plaintiff's own expert, Dr. Ardehali, who testified that the Basaria study was only a "signal." Tr. 712:6–8. Per Dr. Ardehali, signals are not evidence of a causal association. Tr. 691:24–692:01. The FDA agreed with Dr. Ardehali. It was aware of both the Basaria and Xu studies, reviewed and analyzed them, and concluded they did not support a conclusion that there was a causal association between testosterone and heart attacks. Tr. at 731:8–23. The FDA reviewed the Basaria study and concluded that it did not find an increased risk of harm. Tr. 720:5–10. Dr. Ardehali further testified that in January 2014, and again in July 2014—seven and thirteen months *after* Plaintiff's heart attack—the FDA confirmed that the Basaria and Xu studies had limitations, and they were not reasonable evidence of a causal association. Tr. 731:12–732:4. In

fact, Dr. Ardehali, admitted that *to this day*, the FDA has still not found there to be reasonable evidence of a causal association. Tr. at 737:22–24.

### B. No Reasonable Jury Could Find That Androderm's Failure To Warn Of A Hypothetical Cardiovascular Risk Was A Direct Cause Of Plaintiff's Heart Attack

Plaintiff's failure to warn claim also fails because he cannot establish that any warning he could have been provided would have prevented his myocardial infarction. To prevail on a failure to warn claim, like all products liability claims, "the plaintiff must show a causal link between the alleged defect and the injury." *Green Plains*, 953 F.3d. at 548 (quoting *Rients v. Int'l Harvester Co.*, 346 N.W.2d 359, 362 (Minn. App. 1984)). Minnesota courts have not adopted a "heeding presumption" that an adequate warning would have been followed. *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 925 (8th Cir. 2004).[1] Under Minnesota law, Plaintiff must prove his heart attack *would not have happened* but for the inadequate warning. Tr. 204:14–16 (Preliminary Instructions); *George v. Estate of Baker*, 724 N.W. 2d 1, 11 (Minn. 2006) (requiring but-for causation under Minnesota law); *see also Haunstein v. Loctite Corp.*, 347 N.W.2d 272, 276 (Minn. 1984) (if an injured plaintiff would not have acted any differently had there been a warning, the manufacturer's failure to warn is not the cause of the injury). To prove this he must present evidence that he would have acted differently had a warning been given. *Krein v. Raudabough*, 406 N.W.3d 315, 320 (Minn. App. 1987).

No reasonable juror could find that Plaintiff would have acted differently if Androderm had come with a warning of a possible cardiovascular risk. When asked whether he would have taken Androderm if he had known of a possible risk of heart attacks, all Plaintiff could muster was,

---

[1] There is no evidence that Dr. Firestone ever read the Androderm package insert or relied on it in prescribing Androderm to Mr. Martin. Accordingly, Plaintiff must present evidence that he would not have not taken Androderm if he had known of the claimed cardiovascular risk.

4

"[p]robably not." Tr. at 343:6–12; *see also* 343:22–44:03 (stating that he "probably" wouldn't have brought up Androderm to Dr. Firestone had he known of a potential risk, and that he "probably" would have looked for an alternative). Plaintiff has a well-documented history of ignoring the warnings and medical advice he has been given. Critically, Plaintiff admitted that on the morning of his heart attack, he took a pain medication that came with a *stronger* warning for heart attacks than the one he claims would have prevented him from using Androderm. Plaintiff testified that it was his practice to read the labels of any medications he took. Tr. 443:20–22. But in May 2013, when Plaintiff claims he was using Androderm, Plaintiff testified that he was also taking Etodolac, whose label contained a "black box" warning of an "increased risk" of myocardial infarction. Tr. 443:08–445:14. Plaintiff's own expert testified that this warning is stronger than the "possible risk" the FDA required for Androderm in 2015. Tr. 736:21–737:6. Yet Plaintiff admitted that he took Etodolac despite its bolder warning of the precise risk he claims he would have heeded if it had been included in Androderm's label. Tr. 445:9-14 ("Q. And you took [Etodolac] including up to the day of your heart attack, correct? A. Yes, ma'am. Q. Is it correct that that warning did not prevent you from taking this medication? A. Yes."). No reasonable juror could find that Plaintiff would have acted differently based on a milder warning of cardiovascular risk from Androderm.

Adding to Plaintiff's pattern of ignoring warnings he has received is his failure to follow medical advice. Plaintiff admitted that leading up to his heart attack, he failed to take medications to treat multiple myocardial infarction risk factors as directed. Tr. 348:8–17 ("Q. [T]here were different times that you had elected to stop taking your medication that controlled your high blood pressure, correct? A. Yes, ma'am. . . . Q. And you had also made decisions from time to time to stop taking your medication that controlled your high cholesterol, correct? A. Yes, ma'am."). He

5

failed to take an aspirin the night before his heart attack. Tr. 409:6–9. Less than two years after his heart attack, Plaintiff experienced "identical" symptoms but waited three days to seek medical help. Tr. 422:15–431:12. After he was advised to go to the ER "within the hour," he did not go to urgent care until the next day—four days after developing symptoms. *Id.* At the hospital to which he was transferred, Plaintiff admitted that he "occasionally takes his aspirin, but . . . often forgets." Tr. 432:22–433:5. Given the overwhelming evidence that Plaintiff read, but ignored risks on labels, as well as other instructions from his doctor, no reasonable jury could find that he would not have taken Androderm if it had a warning of cardiovascular risk.

## II. FRAUDULENT MISREPRESENTATION

Actavis is entitled to judgment as a matter of law on Plaintiff's fraudulent misrepresentation claim because there is no evidence that he or Dr. Firestone relied on any purportedly false representations made by Actavis.[2] *Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007) (internal citations omitted) (reciting the five elements of fraudulent misrepresentation); Tr. 203:22–204:8 (Preliminary Instructions). Minnesota law requires evidence of actual reliance to create a question of fact for a jury. *Hoyt Properties*, 736 N.W.2d at 321; *see also Conklin v. ETOC Co.*, 2013 WL 4779081, at *3 (Minn. App. Sept. 9, 2013) (requiring a nonmoving party to present evidence of "actual reliance" to create a genuine issue of fact to defeat summary judgment).

Plaintiff offered no evidence that he saw a single Actavis representation or advertisement, let alone relied upon one. Plaintiff admits he cannot remember the brand of any advertisement he

---

[2] To the extent Plaintiff's fraudulent misrepresentation claim is rooted in the allegation that Actavis misrepresented or failed to disclose information that was later included in the 2015 label and prescribing information, these claims fail on causation grounds because there is no evidence that the 2015 evidence would have dissuaded Dr. Firestone from prescribing Androderm to Plaintiff. *See* § II.B.

6

saw. Tr. 342:18–24 ("I don't remember any specific brands"). In fact, Plaintiff's testimony makes clear he never saw any Androderm marketing materials. Plaintiff stated that he "was seeing TV ads all the time about low T." Tr. 342:20–21. Plaintiff's counsel even represented that he relied on television advertisements in her opening statement. Tr. 228:14–16 (Plaintiff's opening). Plaintiff presented hours of testimony on Actavis' marketing efforts, and introduced numerous Androderm marketing materials into evidence during his case in chief. Not a single television advertisement was entered into evidence, nor did a single witness ever testify that Actavis advertised on television—because they did not.

Nor has Plaintiff offered any evidence that Dr. Firestone ever saw a single marketing Actavis marketing piece. While there is evidence that Actavis marketed to primary care physicians and VA hospitals, the evidence shows that Actavis in fact did not target the St. Cloud VA clinic where Dr. Firestone worked, but rather key networks and top 20 facilities—none of which were located in Minnesota. Ex 393.3–393.8. In denying Defendants' motion *in limine*[3] regarding marketing materials, the Court based its ruling in part on evidence that Actavis' web-based advertisements that targeted doctors specifically. (Dkt. 245, at 22–23.) No such evidence has been presented in trial, as Plaintiff declined to call Erik Pluckhorn, whose testimony supports those claims. *See* (Dkt. 179, at 3) (citing Pluckhorn Dep. Tr. 115:10–116:19.) Even with that additional evidence, not present here, the Court previously described the connection as "tenuous." (Dkt. 245, at 23.) Simply put, Plaintiff has not presented substantial evidence that he or Dr. Firestone ever saw an Androderm ad, and therefore could not have relied upon one. *Hoyt Properties*, 736 N.W.2d

---

[3] In its summary judgment opinion, the Court did not address whether marketing materials could be the basis of Mr. Martin's fraudulent misrepresentation claim. Rather, it ruled that omissions in the label could have been the basis for the claim. (Dkt. 104, at 51.) As previously stated, to the extent Plaintiff's fraudulent misrepresentation claim is based on the omission of a cardiovascular warning in the label, Plaintiff's claim fails on causation. *See* § II.B.

7

at 321. Because Plaintiff did not prove that either he or Dr. Firestone relied on any representation of Actavis, his fraudulent misrepresentation claim fails as a matter of law.

### III. PLAINTIFF HAS NOT OFFERED LEGALLY SUFFICIENT EVIDENCE THAT ANDRODERM WAS A DIRECT CAUSE OF HIS HEART ATTACK

Each of Mr. Martin's claims requires proof that Androderm was a direct cause of his heart attack. Tr. at 201:8–9; 202:19–20; 204:7–8 (preliminary instructions). Under Minnesota law, a direct cause is one that had a substantial factor in bringing about the harm. Tr. at 204:14–16; *George v. Estate of Baker*, 724 N.W.2d 1, 10 (Minn. 2005). As the court recognized, "But-for causation, however, is still necessary for substantial factor causation because if the harm would have occurred even without the negligent act, the act could not have been a substantial factor in bringing about the harm." CMO No. 166 at 29 (quoting *George*, 724 N.W.2d at 10).

Dr. Ardehali's opinion failed to satisfy this standard. In fact, Dr. Ardehali conceded that any one of Mr. Martin's numerous cardiac risk factors was sufficient to cause his heart attack. Tr. 636:14–16 ("Q. and you agree that any one of those risk factors is sufficient to cause a heart attack? A. Yes, I would agree with that."). Plaintiff admits that he had several cardiac risk factors before he had his heart attack, including: hypertension, high cholesterol, family history of cardiovascular disease, pre-diabetes, overweight BMI, restless leg syndrome, a history of smoking, and sleep apnea. Tr. 353:15–22; 376:13–376:22; 345:24–346:3; 371:12–371:20; 349:19–350:17; 358:6–12; 360:19–24; 349:2–5; 351:7–9; 412:1–18; 350:25-351:6. Dr. Ardehali testified that combining these risk factors makes the likelihood of a heart attack even greater. Tr. 636:17–19; 653:5–11. Critically, Dr. Ardehali also underestimated Plaintiff's baseline risk of heart attack. Tr. 656:14–19 (classifying Plaintiff as a nonsmoker); 649:16–21 (unaware that Plaintiff took himself off of his hypertension medication).

8

In sum, Dr. Ardehali failed to offer an opinion that Plaintiff's would not have had a heart attack even if he never took Androderm. Instead, he conceded that any one of Plaintiff's risk factors was sufficient to cause Plaintiff's heart attack, and that the overwhelming number of them made that likelihood even greater. Tr. 636:14–19; 653:5–11. As Plaintiff's evidence is insufficient to satisfy his burden on causation, Actavis is entitled to judgment as a matter of law on all three of his claims. *George*, 724 N.W.2d at 10.

## IV. ACTAVIS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES

Judgment as a matter of law should be granted on the issue of punitive damages because the evidence that Plaintiff relies upon in support of his claim has no "nexus" to his myocardial infarction, which means any punitive damages award would be unconstitutional. *See, e.g., Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) (holding that the Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580 (1996) (noting that punitive damages awards should be related "to the actual harm inflicted on the plaintiff"); *State Farm Mut. Auto Ins. v. Campbell*, 538 U.S. 408, 422–23 (2003) ("[d]ue process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis."). There is no evidence that Plaintiff (or his prescribing doctor) saw a single advertisement for Androderm. Tr. 342:18–24; *see also* § II. Any punitive damages award based on these essential components of Plaintiff's case would accordingly be unconstitutional.

Furthermore, under Minnesota law, punitive damages may be awarded:

> only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others. . . . A defendant has acted with deliberate disregard . . . if [it] has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of

9

others and: (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn. Stat.§ 549.20 at subdiv. 1. "Punitive damages are an extraordinary remedy to be allowed with caution and within narrow limits." *J.W. ex rel. B.R.W. v. 287 Intermediate Dist.*, 761 N.W.2d 896, 904 (Minn. Ct. App. 2009) (citation omitted). "In order to impose the extreme punishment and deterrence of punitive damages, there must be a maliciousness, an intentional or willful failure to inform or act." *Beniek v. Textron, Inc.,* 479 N.W.2d 719, 723 (Minn. Ct. App. 1992) (granting motion for directed verdict where there was no evidence that the defendant acted with "malicious disregard") (citation omitted).

Plaintiff has not presented clear and convincing evidence that Actavis acted in the "conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others." Minn. Stat § 549.20 at subdiv. 1. Plaintiff's case hinges on the still-debated claim that testosterone replacement therapy, products increases the risk of heart attacks. The FDA to this date has only found that testosterone products pose a possible risk, not a known one. In fact, the FDA's decision to require a study (of 6000 patients) only confirms that Actavis did not deliberately act in conscious or intentional disregard of the ***high degree of probability*** of injury to others— unless one believes the FDA is willing to risk a high degree of probability of injury to its study's subjects. Accordingly, the Court should direct a verdict on Plaintiff's punitive damages claim.

## CONCLUSION

For the foregoing reasons, Actavis respectfully requests that the Court enter judgment in Actavis' favor on Plaintiff's claims.

10

Dated:  August 12, 2021   Respectfully submitted,

By: */s/ Hariklia Karis*
Hariklia Karis, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:  +1 312 862 2000
Hariklia.Karis@kirkland.com
*Attorney for Defendants Actavis Inc., Actavis Pharma Inc., Actavis Laboratories UT, Inc.*

Jeffrey F. Peck
Jeffrey D. Geoppinger
John R. Ipsaro
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
(513) 698-5038
(513) 698-5039 FAX
Email:  jpeck@ulmer.com
Email:  jgeoppinger@ulmer.com
Email:  jipsaro@ulmer.com

*Attorneys for Defendants Actavis Inc., Actavis Pharma, Inc., and Actavis Laboratories UT, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on August 12, 2021, a copy of the foregoing was electronically filed in the court system, which will send such filing to all attorneys of record.

By: */s/ Hariklia Karis*