**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **In re Testosterone Replacement Therapy Products Liability Litigation Coordinated Pretrial Proceedings** ) ) ) ) | Case No. 14 C 1748 MDL No. 2545 |
| **(This document applies to** ) ***Martin v. Actavis, Inc.*, Case No. 15 C 4292)** ) | |

**CASE MANAGEMENT ORDER NO. 190
(Memorandum Opinion and Order on certain motions
in *Martin v. Actavis, Inc.*, Case No. 15 C 4292)**

MATTHEW F. KENNELLY, District Judge:

In this case, which is part of a multidistrict litigation proceeding, plaintiff Brad Martin, who claimed he suffered injuries caused by Actavis, Inc.'s testosterone replacement therapy product, opted out of a global settlement involving claims against Actavis. In August 2021, Martin's case—which before the settlement had been selected as a "bellwether" trial—went to trial, and a jury returned a verdict finding that Actavis was not liable. On August 6, 2022, the Court denied Martin's motion for a new trial. *See In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc. (Martin v. Actavis, Inc.)*, No. 14 C 1748, 2022 WL 3139565 (N.D. Ill. Aug. 6, 2022). Martin has filed a motion to reconsider the denial of his motion for a new trial. Actavis has moved to recover costs, seeking over $45,000. For the reasons set forth below, the Court denies Martin's motion and grants Actavis's motion, but only for $16,609.46.

## Discussion

**A.     Martin's motion for reconsideration**

The Court's discussion of Martin's motion for reconsideration assumes familiarity

with the facts of the case and the Court's ruling denying his motion for a new trial. "Rule 59(e) allows a court to alter or amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence." *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008). Martin premises his motion for reconsideration on two primary arguments: 1) Actavis knowingly concealed the FDA letter such that Federal Rule of Civil Procedure 26 required Actavis to produce the document; and 2) CMO 15 did not provide a time range limiting what Actavis was required to produce. Neither of these arguments has merit.

    **1.    Knowing concealment**

Martin argues that Federal Rule of Civil Procedure 26 required Actavis to produce the FDA letter as soon as the company received it because "it became a 'knowing concealment' to hold that letter from July 12, 2021 until August 17, 2021." Pl.'s Mot. to Recons. at 2 (dkt. no. 390). Additionally, according to Martin, the way in which Actavis used the letter at trial "rendered its prior productions incomplete." *Id.* at 4. The Court overrules these arguments as a basis for reconsideration.

The Court has already addressed Martin's argument that the letter rendered Actavis's earlier productions incomplete. *See In re Testosterone*, 2022 WL 3139565, at *5 ("In sum, the Court is not persuaded that the Rule 26(e) duty to supplement obligated Actavis to produce the March 2018 FDA letter."). Furthermore, to the extent that Martin contends that Actavis relied on the letter to affirmatively support its case by referencing its demonstrative exhibit showing Martin's history of hypertension, the Court disagrees and notes that it has already concluded the "letter [was] not a document that Actavis intended to use to support its claims or defenses." *Id.* Put simply, Martin's attempt to

relitigate the issue of whether Actavis had a duty to supplement does not rise to the level of manifest error required for a motion for reconsideration.

Regarding Martin's argument that Actavis knowingly concealed the FDA letter, the Court first points out that this argument is likely forfeited. Martin's original briefing and his supplemental brief focused almost exclusively on whether the letter was responsive to prior discovery requests and whether the duty to supplement was triggered. But even if the Court were to conclude that Martin properly preserved this argument, the Court already rejected the proposition that Actavis concealed the existence of the FDA study at issue. The Court wrote: "In short, the post-marketing study and its genesis cannot be said to have been concealed in its entirety. The records produced in June 2021 brought the point to the attention of Martin's counsel sufficient[ly] that he could have sought further disclosures or discovery if he considered it important." *Id.* at 6. The Court therefore disagrees that the issue of Actavis's claimed concealment of the FDA letter meets the level of "manifest error" that a motion for reconsideration demands.

2. **CMO 15**

Martin argues next that "CMO 15 provides Actavis no shelter" because there was no date range limitation for the ESI searches. Pl.'s Mot. to Recons. at 8 (Case No. 15 C 4292, dkt. no. 390). Even if true, this contention does not change the calculus or show manifest error in the Court's ruling. As the Court previously explained, "Actavis complied with its custodian production obligations, and the fact that a later search of a single custodian's e-mails would have turned up the FDA letter does not mean that the original custodian production was incomplete or incorrect." *See In re Testosterone*,

3

2022 WL 3139565, at *6. In other words, no matter the date range, Actavis complied with ESI obligations prior to March 2018, and as the Court previously explained, Actavis did not have a continuing obligation to keep running ESI searches even assuming there was not a specific date range originally. And to this point, Martin acknowledges that Actavis did not have to conduct a new search. See Pl.'s Mot. to Recons. at 9 (dkt. no. 390) ("Mr. Martin is not arguing Actavis had to conduct a new search."). At bottom, no matter the date range of the ESI search, Martin has not shown that Actavis was required to supplement its original productions pursuant to Rule 26(e). His Martin's argument on this issue does not rise to the level of manifest error that would warrant reconsideration.

The Court denies Martin's motion for reconsideration.

**B.     Actavis's bill of costs**

A prevailing party is typically entitled to recover costs. See Fed. R. Civ. P. 54(d)(1). "[A] cost must be both reasonable and necessary to the litigation for a prevailing party to recover it." *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008). "The presumption in favor of awarding costs to the prevailing party is difficult to overcome, and the district court's discretion is narrowly confined—the court must award costs unless it states good reasons for denying them." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir. 1997).

As the prevailing party, Actavis requests $46,287.72 via its bill of costs. This breaks down to $9,384.00 for trial transcripts, $28,707.02 for depositions, $4,417.42 for witnesses, and $3,779.28 for trial reproductions. Martin does not dispute the trial transcript costs but takes issue with the amounts in the other three categories. He also

asks the Court to penalize Actavis for overreaching in its bill of costs.

At the outset, the Court rejects Martin's penalty request. Actavis's proposed costs—all of which are at least sometimes recoverable—were premised on colorable arguments. *Cf. Nochowitz v. Ernst & Young*, 864 F. Supp. 59, 60 (N.D. Ill. 1994) (penalizing a prevailing party's costs when its "legal positions were not even colorable"). Moreover, the fact that the parties proposed costs were roughly $31,000 apart is not evidence of bad faith, especially when considered in the context of other TRT bellwether cases. *See* Actavis's Reply in Supp. of Bill of Costs at 13 (dkt. no. 375).

### 1. Deposition costs

Actavis requests the costs associated with twenty-three depositions, which amounts to $28,707.02. Martin points out that twenty-one of these depositions pertained to the entire universe of Actavis cases in the MDL proceeding because they were taken before the global settlement. As a result, he argues, he should not be saddled with covering 100 percent of these costs. He contends that Actavis should only recover 0.421 percent of these depositions—a pro rata amount based on his proposed settlement allocation from the gross settlement award.

The Court finds the global settlement language dispositive. In settling with all but two plaintiffs, Actavis specifically agreed to the following language: "each party to bear its own costs and attorneys' fees." Pl.'s Obj. to Defs.' Bill of Costs at 2 (dkt. no. 373). The depositions conducted prior to the settlement contributed, directly or indirectly, to Actavis agreeing to a global settlement. The Court therefore reads the quoted language from settlement to reflect that Actavis was agreeing to bear the associated costs, which would include the depositions conducted for the benefit of every plaintiff. As such, the

5

Court concludes that Actavis is entitled only to apportioned costs. The Court further finds that the 0.421 figure is appropriate because Actavis only disputes whether costs should be apportioned in the first place and does not dispute this specific percentage.

That said, the costs related to the depositions of Martin and his wife do not warrant apportionment. These depositions only pertained to Martin's individual case. And the Court disagrees with Martin's contention that these depositions "were instrumental" to the global settlement. *Id.* at 4. The Court therefore concludes that Actavis can recover the costs related to the depositions of Martin and his wife in full; it can recover for the depositions of Christopher Cassarino and Joshua Sharlin at the undisputed fifty percent apportionment; and it can recover for the remaining nineteen depositions at 0.421 percent of the total.

Lastly, Martin further disputes other "nebulous" costs related to deposition exhibits and video synchronization. The Court agrees with Martin that these costs are not recoverable because they were not reasonably necessary. *See Little*, 514 F.3d at 702. The Court is not persuaded by Actavis's contention that these costs were justified by the short time period in which the depositions were conducted, as that is exactly what is to be expected in an MDL proceeding like this. Nor is the Court persuaded by the vague contention, without any further detail or examples, that printing deposition exhibits was necessary for understanding the depositions. Additionally, regarding the video costs, the Court points out that these costs were not based on recording the depositions themselves, which would be a reasonable and necessary expense in a bellwether case within an MDL that may be tried outside of its normal venue. Instead, these costs were simply for synchronizing video depositions with their transcripts, which

is better characterized as a convenience than as reasonably necessary.

In sum, the Court agrees with Martin's assessment of the deposition costs on pages seven and eight of his response brief, with the caveat that the costs of the depositions of Martin and his wife are recoverable in full. The Court calculates the recoverable deposition costs to total $2,869.84.

### 2. Witness costs

In its original bill of costs memorandum, Actavis sought recovery for first-class airfare 6f $944.80 for one of its witnesses, Dr. David Feigal. In response, Martin correctly points out that "a witness shall utilize a common carrier at the most economical rate reasonably available." 18 U.S.C. § 1821(c)(1). In its reply, Actavis accordingly reduced that cost to $349, which is the estimated amount of a basic economy ticket.

As a general matter, witness travel costs are recoverable. *See Majeske v. City of Chicago*, 218 F.3d 816, 826 (7th Cir. 2000) (permitting an "award of costs to reimburse witnesses for their reasonable travel and lodging expenses"). In a circumstance like this where the original requested amount is too high, the typical recourse is for the Court to reduce the amount, rather than deny the award entirely. *See, e.g., Pezl v. Amore Mio, Inc.*, No. 08 C 3993, 2015 WL 2375381 (N.D. Ill. May 13, 2015) (reducing printing expenses); *Kinser v. CBS Corp.*, No. 94-2282, 2014 WL 1493485, at *4–5 (C.D. Ill. Apr. 16, 2014) (reducing travel expenses). The Court finds that Actavis's proposed $349 amount is recoverable given that Dr. Feigal flew round trip from Los Angeles to Chicago on short notice.

With this modification, the Court concludes that Actavis can recover $3,821.62 for witness costs—the original amount requested ($4,417.42), minus the first-class

ticket price ($944.80), plus the economy ticket price ($349.00).

### 3. Trial reproduction costs

Finally, Actavis seeks $3,245.28 for the costs it incurred in printing trial exhibits and demonstratives. Martin argues that these costs were unnecessary because the Court's COVID policies disallowed paper copies, and copies for counsel's own use generally are not recoverable. In its reply, Actavis correctly points out that the Court asked each party to bring a hard copy of its trial exhibits as a backup. The Court notes, however, that it requested only *a single copy*. As presented, the Court is unable to determine how many trial exhibit copies Actavis printed. Because these trial exhibit printing costs are not broken out, the Court is unable determine how much a single set of trial exhibits cost. Actavis bears the burden of this uncertainty.

Conversely, Actavis has broken out the printing costs for its five demonstratives and appears to have only printed one of each. The Court finds that these costs are recoverable. Additionally, the Court rejects Martin's request to deny the costs of the Etodolac exhibit. As the Court explained in its decision denying Martin's motion for a new trial, this exhibit was properly admitted. *See In re Testosterone*, 2022 WL 3139565, at *3. The Court concludes that Actavis is entitled to $534.00 in total for trial reproduction costs.

### Conclusion

For the reasons stated, the Court denies the plaintiff's motion for reconsideration [390] and grants the defendant's bill of costs [353] in the amount of $16,609.46.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 10, 2022